**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| ROBERT NEWTON,<br><br>              Plaintiff,<br><br>vs.<br><br>UTAH NATIONAL GUARD, UTAH AIR<br>NATIONAL GUARD, BRIAN L. TARBET<br>in his official and individual capacities,<br>BRENT E. WINGET, in his official and<br>individual capacities, LARRY T. JOHNSON,<br>in his official and individual capacities,<br>WAYNE E. LEE in his official and individual<br>Capacities, and JOHN R. TETER, in his<br>official and individual capacities, | **MEMORANDUM DECISION**<br>**AND ORDER**<br><br><br><br><br><br><br><br><br>**Case No. 2:07CV00041** |

This matter is before the court on Defendants' Partial Motion to Dismiss. The court held a hearing on the motion on June 12, 2007. At the hearing, Defendants were represented by Bridget Romano and Anne Mortensen, and Plaintiffs were represented by Scott Crook and Christopher Preston. The court took the matter under advisement and has carefully considered the materials submitted by the parties as well as the law and facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

Defendants move to dismiss Plaintiff's federal claims on the following grounds: (1) Defendants are not persons under 42 U.S.C. § 1983 and are therefore immune in their official capacities; (2) Defendants enjoy qualified immunity in their individual capacities; (3) Plaintiff has no right of private action for his claim under the Federal Whistleblower

Protection Act; and (4) Plaintiff has failed to exhaust his available administrative remedies as to both his pre-termination and post-termination due process.

## BACKGROUND

Plaintiff, Robert Newton, became an air traffic controller in 1968, receiving both an Air Traffic Control Specialist ("ATCS") Certificate and a Federal Aviation Administration ("FAA") Certificate, or "Pink Card". Newton was employed with the Utah Air National Guard ("UANG") in both military and civilian capacities from 1985 until December 31, 2002. From January until November 2003, Newton worked solely as a civilian for the UANG. On November 20, 2003, Lt. Col. John R. Teter verbally suspended Newton's ATCS Certificate, relieving him from duty. Teter then filed an ATCS Certificate Suspension (Pending Withdrawal) on December 7, 2003.

On December 15, 2003, Teter also issued a Notice of Proposed Removal of Newton, citing an incident on November 17, 2003, where Newton allegedly failed to supervise subordinates and disregarded directives. Newton objected to both actions and requested that all the alleged incidents upon which the actions were based be identified and summarized. He also requested an opportunity to respond to the charges against him. In response, Lee issued a memorandum, dated December 23, 2003, granting Newton's request. On January 20, 2004, a copy of that memorandum was forwarded to the National Transportation Safety Board (NTSB) in Washington, D.C., recommending that Newton's ATCS Certificate be withdrawn. Newton alleges that he was given insufficient time to address the allegations against him and that the memorandum included additional information of which he was not aware.

However, Lee did not ultimately remove Newton from duty but, rather, reduced the disciplinary decision to a fourteen-day suspension from duty and pay beginning February 1, 2004.[1]  Newton filed a grievance against this action, which was denied.  On February 24, 2004, the National Guard Bureau Career Field Manager for Air Traffic Control recommended that Newton's ACTS certificate be permanently withdrawn. Based upon this determination, Newton failed to qualify for his duties as an air traffic control supervisor and received a Notice of Proposed Separation for Disqualification by the UANG on March 2, 2004.  Newton was then indefinitely suspended from duty and pay pending a review proceeding by the NTSB concerning the withdrawal of his ATCS Certificate.  Newton filed a grievance against the suspension which was upheld.  While still on indefinite suspension, Newton retired in August 2006.

Newton then filed suit against Defendants Utah National Guard, Utah Air National Guard, Brian L. Tarbet, Brent E. Winget, Larry T. Johnson, Wayne E. Lee and John R. Teter, in both their official and individual capacities, for violation of his due process and equal protection rights.  Defendants moved for a partial motion to dismiss Plaintiff's complaint.

## DISCUSSION

### I.      Plaintiff's Civil Rights Claims

Defendants argue that this court should dismiss Plaintiff's § 1983 civil rights claims against them in their official capacities because they are not persons under § 1983 and in their individual capacities because they are entitled to qualified immunity.

---

[1] Lt. Col. Lee rescinded the Notice of Proposed Removal on June 24, 2004.

1.      **Plaintiff's § 1983 claims against Defendants[2] in their official capacities**

Defendants argue that they are not persons under 42 U.S.C. § 1983 and even if they could be considered persons, Plaintiff's claim should be dismissed because it seeks back pay and retrospective declaratory relief.  Plaintiff contends that his claim seeks injunctive and prospective relief and, therefore, should be allowed to proceed.

Under 42 U.S.C. § 1983, a person acting under color of state law who deprives an individual of constitutional rights may be liable to the injured party.  However, neither a state nor its officials acting in their official capacities are persons under § 1983.  *Will v. Michigan Dep.'t of State Police,* 491 U.S. 58, 71 (1989).  Further, governmental entities that are arms of the state for Eleventh Amendment purposes are not persons under § 1983.  *Harris v. Champion,* 51 F.3d 901, 905-06 (10th Cir. 1995).  Defendants UNG and UANG are clearly arms of the state and are, therefore, immune from suit.  Thus all § 1983 claims against Defendants Utah National Guard and Utah Air National Guard are dismissed.

However, Plaintiff argues that claims against Defendants Tarbet, Winget, Lee and Teter, in their official capacities, should not be dismissed because immunity extends only to claims for monetary damages and his claim is for injunctive relief.  In *Will v. Michigan Dep't of State Police*, the Court specifically noted that "a state official in his…official capacity, when sued for injunctive relief, would be a person under § 1983 because official capacity actions for prospective relief are not treated as actions against the State."  *Id.* at 71 n.10 (quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n.14 (1985)) (internal

_____

[2] Plaintiff concedes that Defendant Larry T. Johnson has not been properly served with an Amended Complaint and Summons in this matter.  Therefore any claims against him are not properly brought before this court.  (Pl.'s Mem. Opp. Def. Partial Motion to Dismiss, n. 1).

quotations omitted).  Plaintiff argues that requests for back pay and a recalculation of his retirement benefits are prospective injunctive relief, thus falling under the exception noted in *Will*.

The court, however, finds that Plaintiff's argument is without merit and misstates clearly established law.  In *Meiners v. University of Kansas*, the Tenth Circuit dismissed claims for back pay against two university officials in their official capacities, stating that "claims for back pay…and retrospective declaratory relief are barred by the Eleventh Amendment.  359 F.3d 1222, 1232 (10th Cir. 2004).  Plaintiff's claims for back pay against Defendants in their official capacities are identical to those in *Meiners* and, therefore, are barred by the Eleventh Amendment.

Plaintiff next argues that his request for a recalculation of his retirement benefits should be characterized as injunctive relief under the narrow exception of *Ex Parte Young*.  Under *Ex Parte Young*, state officials are not immune from suit in their official capacities for claims seeking injunctive relief.  *Ex Parte Young,* 209 U.S. 123 (1908).  However, unlike the narrow exception cited in *Ex Parte Young*, a claim for a recalculation of retirement benefits is properly characterized as retrospective declaratory relief, not prospective injunctive relief.

Although the Tenth Circuit has not directly addressed this issue, the court finds two cases from other jurisdictions to be persuasive.  In *Edelman v. Jordan*, the Court held that the Eleventh Amendment barred the retroactive payment of benefits wrongfully withheld since the money to reimburse the plaintiffs would come from the revenues of the state and not the individuals themselves.  415 U.S. 651, 668 (1974).  Although Plaintiffs in that case characterized any potential award as equitable restitution, the Court

found that any such payment was indistinguishable from an award of damages against the state, exactly the type of liability the Eleventh Amendment sought to prevent.  *Id.*

Similarly, in *Gage v. New York State Dept. of Health*, the court held that the Eleventh Amendment barred a suit against state officials requiring the recalculation of long-term health benefits.  In *Gage*, the New York State Department of Health had imposed a penalty rendering certain patients ineligible to receive long-term health benefits under Medicaid for a period of time.  The patients sought to have the commencement of the penalty period recalculated so as to be eligible for greater Medicaid benefits.  The court granted the State's motion to dismiss, stating that Defendants were immune from suit under the Eleventh Amendment.  The court agreed with Defendants, holding that state officials may not be held liable for past violations of federal law.  Additionally, because a recalculation of retirement benefits would require the expenditure of funds from the public treasury, the relief requested was retrospective rather than prospective and barred under the Eleventh Amendment.  Like *Gage*, Plaintiff in this case is seeking a recalculation of retirement benefits which is clearly impermissible under the Eleventh Amendment.

Therefore, because Plaintiff's § 1983 claims for back pay and a recalculation of retirement benefits do not fall under the narrow exception of *Ex Parte Young* and cannot be characterized as prospective, injunctive relief, Defendants' motion to dismiss the § 1983 claims against Defendants Tarbet, Winget, Lee and Teter in their official capacities is granted.

## 2.      Plaintiff's claims against Defendants in their individual capacities

Defendants argue that Plaintiff's § 1983 claims against Defendants Tarbet, Winget, Lee and Teter should be dismissed in their individual capacities under the doctrine of qualified immunity.

As an initial matter, Defendants raised the issue of qualified immunity in their reply memorandum and not in their partial motion to dismiss.  Generally, arguments raised for the first time in a reply brief are improper.  *United States v. Mora,* 293 F.3d 1213, 1216 (10ᵗʰ Cir. 2002), *see also Codner v. United States,* 17 F.3d 1331, 1332 n.2 (10ᵗʰ Cir.1994); *Lyons v. Jefferson Bank & Trust,* 994 F.2d 716, 724 (10ᵗʰ Cir.1993).  At oral argument, however, Plaintiff declined an opportunity to respond.

Even if the court were to address the qualified immunity issue as part of Defendants' partial motion to dismiss, the court concludes that there are too many factual issues in dispute at this stage of the litigation.  In determining whether qualified immunity applies, the court must first determine if defendant has violated a clearly established constitutional right.  *Walker v. City of Orem,* 451 F.3d 1139, 1151 (10ᵗʰ Cir. 2006).  It then falls to the Plaintiff to demonstrate that he possessed a protected property or liberty interest to which due process has attached and that he was not afforded an appropriate level of process.  *Schultz v. City of Longmont,* 465 F.3d 433, 443 (10ᵗʰ Cir. 2006).

To have a property interest, Plaintiff must demonstrate more than an abstract need or desire and more than a unilateral expectation.  *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972).  Instead, Plaintiff must demonstrate a legitimate claim of entitlement to the purported property interest.  *Id*.

While Plaintiff does not specifically allege a property interest in his ACTS certificate within the four corners of his First Amended Complaint, there is clear law that establishes that an individual has a protected property interest in a professional license. *Seay v. Campbell,* 130 Fed.Appx. 268 (10th Cir. 2005) (unpublished) (property interest exists in license to practice dentistry), *Barry v. Barchi,* 443 U.S. 55, 64 (1979) (individual has a protected property interest as a state licensed harness racing trainer); *In re Poole,* 222 F.3d 618, 620 (9th Cir. 2000 (physician has a constitutionally protected property interest in his or her medical license); *see also Schware v. Board of Bar Examiners,* 353 U.S. 232, 238-39 (1957) (a professional's license is a protected property interest).

Arguably, Plaintiff's ATCS Certificate is indistinguishable from any other professional license.  Like a physician or a harness racing trainer, without it, Plaintiff would be disqualified from employment as an air traffic controller.  Therefore, whether or not the interest was properly alleged in his pleadings, the law confers a protected property interest in maintaining his ATCS Certificate.  Plaintiff thus meets the first prong of the qualified immunity test.

Having properly asserted a protected property interest, Plaintiff must then show that he was denied the appropriate level of due process.  Qualified immunity enables a government official "ample room for mistaken judgment by protecting all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  To defeat qualified immunity, Plaintiff must demonstrate a substantial correspondence between the conduct at issue and the law that clearly prohibits Defendants' individual actions.  *Jantz v. Muci*, 976 F.2d 623, 627 (10th Cir. 1992).

a)       *Procedural Due Process*

Defendants argue that Plaintiff's procedural due process claims against Defendants in their individual capacities should be dismissed because Plaintiff has already received all the due process necessary and there are no material issues of fact that would allow a due process claim to proceed on its merits.

Plaintiff alleges that statutory and regulatory requirements guaranteed him much more than simply notice and an opportunity to respond.  First he claims that he was not allowed to be heard in a meaningful time and in a meaningful manner because Teter and Lee did not comply with the timing and notice requirements of AFI 13-203 when they initially suspended Newton's ATCS Certificate.  Plaintiff also alleges that a packet that was sent on or about January 21, 2004, to the Major Command Headquarters for a final determination of Plaintiff's ATCS Certificate status contained material regarding the withdrawal of his ATCS certificate that he had never seen or had an opportunity to address.  Plaintiff further alleges that he was deprived of a neutral and detached judge because Lee, the factfinder reviewing his protests against the withdrawal of his ATCS certificate and the related disciplinary actions, met with UANG employees to dissuade them from providing assistance to Newton.

"The essential requirements of due process are notice and an opportunity to respond."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  The opportunity to challenge why a proposed action is being taken is a fundamental due process requirement.  *Id*. at 542.  Further, an employee is entitled "to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  *Id*. at 546.

Thus, the requirements for procedural due process are not extensive and require only notice and an opportunity to be heard.  Plaintiff's reliance on federal statutes and regulations appears to be an improper attempt to expand this requirement.  However, Plaintiff also alleges that one or more of the Defendants improperly withheld information necessary for Plaintiff to properly reply to the charges against him.  Assuming those facts to be true, as this court must at the motion to dismiss stage, the court concludes that Plaintiff's claim for procedural due process has a sufficient factual basis to survive Defendants' motion to dismiss.

    b)    *Exhaustion of Administrative Remedies*

        1.  Post-Termination Due Process

Defendants argue that when Plaintiff voluntarily separated his employment from the UANG in August 2006 without initiating any of the post-termination grievance processes available to him at the UANG, he failed to exhaust all relevant available administrative remedies and his claims against Defendants in their individual capacities should fail.  Plaintiff, however, claims that he was not required to exhaust his post-termination remedies because he is challenging the actions taken against him before he chose to retire and he has no claim for lack of procedural due process in the post-termination context.

Therefore, the parties appear to agree that Plaintiff did not pursue any post-termination due process.  Accordingly, he has waived any right to complain about post-termination process and this case involves only pre-termination due process.

10

2.  Pre-Termination Due Process

At oral argument, Defendants stated that Plaintiff failed to exhaust his administrative remedies pursuant to 32 U.S.C. § 709, the National Guard Technicians Act of 1968 ("NGTA"), because he failed to appeal his suspension to the adjutant general, which is his sole remedy under the NGTA.  By the plain language of the NGTA, "a reduction in force, removal or adverse action involving discharge from technician employment, suspension, furlough without pay, or reduction in rank or compensation shall be accomplished by the adjutant general of the jurisdiction concerned."  32 U.S.C. § 709(f)(3) (1994).  Further, a military technician's right of appeal of an adverse action or removal from technician employment shall not extend beyond the adjutant general of the jurisdiction concerned.  32 U.S.C. § 709(f)(4) (1994).

However, in order for these provisions to apply, a person must be employed under subsection (a) of the NGTA.  Subsection (a) provides for the employment of technicians in support of the National Guard subject to subsections (b) and (c).  *Id*. § 709(a). Subsection (b) does not apply to Plaintiff because it requires a person to be a member of the National Guard and Plaintiff by his own admission was serving solely as a civilian at the time of his suspension.  However, subsection (c) does apply.  Under subsection (c), "A person may be employed under subsection (a) as a non-dual status technician…if the technician position occupied by that person has been designated by the Secretary concerned to be filled only by a non-dual status technician." *Id*. § 709(c)(1).

There is no discussion in the pleadings, and Defendant has not alleged, that Plaintiff's position was so designated.  Thus even if Defendants are correct that under the

NGTA a non-dual status military technician's sole remedy for a suspension or adverse employment action lies with the adjutant general, there exists a material question of fact as to whether Plaintiff was a non-dual status technician under the plain language of the NGTA.

Defendants refer the court to *Alexander v. U.S.* and *Singleton v. M.S.P.B.* to support their contention that Plaintiff's sole remedy lies with the adjutant general. However, the plaintiff in *Alexander* was a member of the National Guard during the period for which he sought relief and the NGTA would clearly apply. *Alexander v. U.S.,* 52 Fed. Cl. 710, 713 (Cl. Ct. 2002). It is unclear from the facts in *Singleton* as to the plaintiff's status at the time of his petition. *Singleton v. M.S.P.B.,* 244 F.3d 1331 (Fed. Cir. 2001). Without the underlying determination of Singleton's status under the NGTA, this case's applicability is questionable. Therefore, these cases appear to be distinguishable given the question as to Plaintiff's status under the NGTA.

Even if this court were to accept Defendants' characterization of the NGTA, the pleadings at this stage are not clear as to whether Plaintiff received notice that his sole remedy was though the adjutant general. There exists a question of fact as to whether Plaintiff was apprised of his rights to appeal the suspension, as well as through which channels that would be possible. Thus, even if Defendants are correct that Plaintiff was bound by the NGTA, questions exist as to whether he received adequate pre-termination due process. Defendants' motion to dismiss Plaintiff's claim for failure to exhaust administrative remedies is denied.

**II.      Plaintiff's claims under the Federal Whistleblower Protection Act**

Finally, Defendants argue that Plaintiff's claim for violation of the Federal Whistleblower Protection Act should be dismissed because this court lacks subject matter jurisdiction over the claim. Plaintiff has brought this cause of action directly to the district court without seeking review under the CSRA.  In Plaintiff's response to Defendants' partial motion to dismiss, Plaintiff argues that he does not state a separate cause of action under the WPA.  In any event, to the extent that Plaintiff's Complaint may be construed to allege a claim based on the WPA, this court lacks jurisdiction over such a claim. *Richards v. Kiernan,* 461 F.3d 880, 885-86 (7th Cir. 2006) ("[T]he CSRA [Civil Service Reform Act] provides the exclusive remedy for claims brought pursuant to the WPA.").

## CONCLUSION

Defendant's Partial Motion to Dismiss is GRANTED with respect to Plaintiff's § 1983 claims against Defendants in their official capacities, any claims Plaintiff may have as to his post-termination due process, and any claims Plaintiff may have asserted under the Federal Whistleblower's Protection Act.  Defendant's Partial Motion to Dismiss is DENIED with respect to Plaintiff's § 1983 claims against Defendants in their individual capacities.

DATED this 30th day of July, 2007.

DALE A. KIMBALL,
United States District Judge